BENJAMIN B. WAGNER
United States Attorney
JEFFREY A. SPIVAK
Assistant U. S. Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700

Attorneys for Plaintiff
United States of America

FILED

JAN 16 2015

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
        DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>              Plaintiff,<br><br>       v.<br><br>APPROXIMATELY $48,000.00 IN U.S. CURRENCY,<br><br>              Defendant | 1:14-CV-02054---BAM<br><br>**ORDER REGARDING CLERK'S ISSUANCE OF WARRANT FOR ARREST OF ARTICLES *IN REM*** |

WHEREAS, a Verified Complaint for Forfeiture *In Rem* has been filed on December 22, 2014, in the United States District Court for the Eastern District of California, alleging that defendant approximately $48,000.00 in U.S. currency (hereafter "Defendant Currency") is subject to forfeiture to the United States pursuant to 21 U.S.C. §§ 881(a)(6), for one or more violations of 21 U.S.C. § 841 *et seq.*;

And, the Court being satisfied that, based on the Verified Complaint for Forfeiture *In Rem* and the affidavit of U.S. Postal Inspector Jessica Burger, there is probable cause to believe that the Defendant Currency so described constitutes property that is subject to forfeiture for such violation(s), and that grounds for the issuance of a Warrant for Arrest of

Order Regarding Clerk's Issuance of Arrest Warrant of           1
Articles *In Rem*

Articles *In Rem* exist, pursuant to Rule G(3)(b)(i) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions;

IT IS HEREBY ORDERED that the Clerk for the United States District Court, Eastern District of California, shall issue a Warrant for Arrest of Articles *In Rem* for the Defendant Currency.

Dated: 1/16/15

GARY S. AUSTIN
United States Magistrate Judge

Order Regarding Clerk's Issuance of Arrest Warrant of Articles *In Rem*     2

# AFFIDAVIT OF JESSICA BURGER

I, Jessica Burger, being first duly sworn under oath, depose and say:

1. I am a U.S. Postal Inspector and have been so employed since January of 2013. Currently, I am assigned to the miscellaneous team of the San Francisco Division of the United States Postal Inspection Service (USPIS). I work out of the Fresno office. I have completed training at the United States Postal Inspection Service Academy in Potomac, MD.

2. As a part of my official duties, it is my responsibility to investigate violations of federal and state law, including the sending of illegal drugs through the U.S. Mail, robbery and burglary of postal facilities, destruction of government property, theft of U.S. Mail, possession of stolen U.S. Mail, mail and bank fraud, identity theft, and counterfeit personal checks and identifications.

3. As an Inspector with the USPIS, I have participated in numerous criminal investigations relating to illegal drugs sent through the U.S. Mail, robbery of postal facilities and employees, theft of U.S. Mail, possession of stolen U.S. Mail, counterfeit personal checks, identity theft, and counterfeit identifications.

4. Based on my personal knowledge gained from my participation in this investigation, my training and experience, information gained from other law enforcement personnel (Inspectors, Agents, local law enforcement, field contacts and reports), and statements of witnesses, victims, and postal personnel, I know the following:

(a). In order to conceal the distinctive smell of certain drugs, mailed packages and their contents tend to be wrapped excessively in bubble pack or padded envelopes, and to be sealed with tape around seams. Often perfumes, coffee, dryer sheets, or other odorous substances are used to conceal the drug scent. These packages often contain a fictitious return address to hide the identity of the drug distributor/shipper, and they are

1

Affidavit of U.S. Postal Inspector Jessica Burger

sometimes addressed to a Commercial Mail Receiving Agency to conceal the ultimate destination and identity of the person receiving the illegal controlled substance.

(b). Individuals trafficking in controlled substances through the U.S. Mail will sometimes add fictitious or made up telephone numbers to the shipping label in an effort to make the mailing look legitimate.

(c). When a distributor mails a controlled substance from a particular area, the proceeds from the sale of the controlled substance is generally returned to the same area via mail.

(d). Individuals trafficking in controlled substances almost always use cash to pay for their shipment/mailing. Cash is used to avoid detection by law enforcement officials.

(e). Paraphernalia associated with the distribution of controlled substances through the mail includes scales, sifters, paper bundles, cutting agents, and plastic bags.

(f). Items in mailed parcels (accompanying illicit drugs) often establish and document illicit drug distribution (sales) and possession. Such property includes, but is not limited to, United States Currency, IOU's, supplier lists, buyer lists, seller lists, chemical formulas, pay/owe lists, personal phone and address books, telephone bills, videos, CDs, DVDs, papers and documents containing names and addresses, books relating to the manufacture of drugs or any other controlled substances, and receipts of chemical and equipment purchases. Such items also often establish the existence of an agreement (conspiracy) related to illicit drug distribution and possession. Items in mailed parcels that establish the obtaining, secreting, transfer, expenditure, and/or concealment of drug distribution proceeds (money and assets) include, but are not limited to, storage locker receipts, books, records, receipts, bank statements and records, money drafts, letters of credit, money order and cashier's checks, passbooks, bank checks, and safe deposit box records and keys. Items in mailed parcels related to the distribution of illicit drugs and illicit drug sale proceeds include financial instruments relating to automobiles,

electronic equipment, aircraft, vessels, domestic and international travel, jewelry, real estate holdings, stocks, and bonds. Illicit drug traffickers often maintain records of drug activity on computers or electronic storage devices and use the mails to provide such records to others.

(g).  It is common that a distributor will use Express or Priority mail because the drugs arrive faster and on a predictable date, thereby allowing the distributor to keep track of the shipment of drugs.

(h).  Priority Mail allows a distributor to avoid detection and identification by law enforcement officials because the shipper need not identify himself and the parcel is left at its destination and the addressee does not have to be present to receive the parcel.

(i).  Express Mail is primarily a business class of mail. The majority of Express Mail is shipped from a business to a business (or individual) or from an individual to a business. Express Mail parcels usually utilize prepared labels and pay with corporate accounts. When an individual pays to send an Express Mail parcel to a business payment is usually by check, debit card, or credit card. Express Mail parcels containing controlled substances almost always have the "Waiver of Signature" signed. By signing this waiver the sender is authorizing the USPS delivery person to leave the parcel at its destination without obtaining a signature from the addressee. This is done by individuals trafficking in controlled substances to avoid detection and identification by law enforcement officials. Also, the parcel is left at its destination and the addressee does not have to be present to receive the parcel.

5.  Based on my training and experience, and working closely with other law enforcement officers, I have become very familiar with criminal methods used to manufacture, possess, package, conceal, transport, and distribute narcotics and narcotic proceeds. I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, in that I am an officer of the

Affidavit of U.S. Postal Inspector Jessica Burger

United States, empowered by law to conduct investigations and make arrests for offenses enumerated in Title 18, United States Code, Section 2516.

6. This affidavit is made in support of a warrant for arrest of approximately $48,000.00 in U.S. Currency (hereafter "Defendant Currency").

7. The facts set forth in this affidavit are known to me as a result of reviewing official reports, documents, and other evidence obtained as a result of the investigation, and through conversations with other agents and detectives who have participated in this investigation and I have determined the following:

8. On August 12, 2014, Inspectors with USPIS while conducting Express Mail profiling activities located a suspicious Express Mail parcel #E1740580700US (the "Parcel").

9. The Parcel was addressed to Andrew Alvarez ("Alvarez"): 27248 San Carlos Avenue, Madera, CA 93637. The Parcel had the following return address: Rolando Exposito, 3600 SW 58ct, Miami, FL 33155. The Parcel's label was handwritten and the seams of the Parcel were heavily taped.

10. Inspectors utilized "Tag" a certified narcotics detecting canine with the Fresno County Sheriff's Department to conduct a "sniff" inspection on the Parcel. Tag, a 10 year old Labrador retriever, is a P.O.S.T. certified narcotics detection canine. Tag received approximately 450 hours of training and was certified in narcotics detection to detect marijuana, cocaine, methamphetamine, heroin, and opium. Upon location of the odor of these five controlled substances Tag's behavior will change and Tag will ultimately come to a "passive" final response in which Tag will stare at or near the source of the odor. Tag has received over 40 hours of ongoing training with his handler.

11. Tag made a positive alert for the presence of narcotics on the Parcel.

12. Inspectors called the number listed on the Parcel for the sender of the Parcel, Rolando Exposito. The individual on the telephone identified himself as Rolando Exposito ("Exposito"). Exposito verified the return address and confirmed he had packaged and

4

mailed the Parcel. Exposito claimed the Parcel contained approximately $32,000. Exposito indicated that he had recently sold three used cars and that the money was going to be used to purchase antique vehicles for restoration.

13. Exposito was unable to provide any information as to where he intended to purchase the antique vehicles and the transactions were "in process." Exposito stated that he has a mechanic shop named, "Mufflers for Less" where he buys, repairs, restores, and sales about 12 cars a year. Exposito told Inspectors that his business does not have a website. Exposito further stated that he prefers to deal in cash and that he keeps documentation of his transactions.

14. Exposito again stated that the money in the Parcel was for the purchase of antique vehicles that he intended to purchase off of Craigslist. Exposito advised that he was going to purchase "Chevys" and "Camaros." Exposito stated that the money was going to his business partner but he repeatedly declined to provide the name of his business partner.

15. Exposito consented to the opening of the Parcel to confirm the contents. The Inspectors kept Exposito on speaker phone while they opened the Parcel to verify the contents. Inside of the Parcel, Inspectors located a second Tyvek Express mailing envelope. Inside of the second Tyvek Express mailing envelope, Inspectors located another heavily taped Express flat rate envelope. Inside of the Express flat rate envelope the Inspector located a large sum of U.S. currency. (The currency was subsequently counted and discovered to total $48,000.00).

16. No documents, such as a cover letter, receipt or invoice, accompanied the Defendant Currency.

17. The Inspector informed Exposito that based on the dog alert, the way the Parcel was packaged and how the Defendant Currency was wrapped, he believed the Parcel may be related to narcotics trafficking.

18. The Inspector again asked Exposito the purpose for shipping the Defendant

5

Affidavit of U.S. Postal Inspector Jessica Burger

Currency. Exposito told the Inspector that he would "rather not say." The Inspector asked Exposito is he would like to disclaim ownership of the Parcel and Exposito agreed. The Inspector read the Disclaimer of Ownership form line by line to Exposito. Exposito stated that he understood, that he had sole interest in the property, and that he was disclaiming ownership

19. Below is a photograph of the Parcel and its contents:



20. On or about August 12. 2014, Inspectors called the telephone number (786-709-3173) listed on the Parcel for the addressee of the Parcel. Nobody answered the phone.

21. In the Inspector's training and experience, Express Mail is commonly used by drug traffickers to transport contraband, narcotics, and currency or monetary instruments associated with contraband or narcotics. By using Express Mail drug traffickers are able to track the parcels, track the dispatch times and locations and, most importantly, have a guarantee of delivery in one or two business days.

22. In the Inspector's training and experience, when legitimate businesses conduct

transactions through the mail, they utilize non-cash payment and include writings, such as letters, receipts, invoices, etc. to memorialize the purpose of the mailing. This Parcel, in contrast, transported $48,000 in rubber-banded cash secreted within multiple heavily taped U.S. Express mail envelopes, with no writing to explain how much money was being sent or why the money was being sent.

23. In the Inspector's training and experience, California is a location from which narcotics, including marijuana, are commonly exported to other states. Florida is a location to which certain narcotics, including marijuana, are commonly imported from other states. When the U.S. Mail is used in interstate narcotics trafficking, especially marijuana trafficking, from California, the narcotics are commonly shipped or trafficked from California to the other state and the financial proceeds are commonly shipped or trafficked back to California. The Parcel and the Defendant Currency were shipped from Florida (a marijuana destination state) back to California.

24. On December 19, 2014, Inspectors conducted database research Exposito's claimed business called "Mufflers For Less." Inspectors entered the "Mufflers For Less" business name and other of Exposito and the Parcel's identifiers into CLEAR, a law enforcement database. The Inspector located 64 hits for Mufflers for Less but none was associated with Exposito.

25. On December 19, 2014, the Inspector again called the telephone number (786-709-3173) listed on the Parcel for the addressee of the Parcel. Again nobody answered.

26. Based on the foregoing, I have probable cause to believe that the Defendant Currency constitutes money or other things of value furnished or intended to be furnished in exchange for a controlled substance or listed chemical, all proceeds traceable to such an exchange and/or was used or intended to be used to facilitate one or more violations of 21 U.S.C. § 841 et seq. As a result of the foregoing, the Defendant Currency is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6).

27. Additionally, "[T]he filing of the forfeiture complaint allows the government

7

immediately to obtain a warrant for the arrest of the res, without any further showing of probable cause. Indeed, arrest of the res is a jurisdictional requirement." <u>United States v. $191,910.00 in United States Currency</u>, 16 F.3d 1051 (9th Cir. 1994). It is respectfully requested that a Warrant for Arrest of Articles *In Rem*, pursuant to the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions Rule G(3)(b)(i), be issued for the Defendant Currency.

JESSICA BURGER
U.S. Postal Inspector
United States Postal Service

Sworn to and Subscribed before me this 16 day of January 2015.

HON. GARY S. AUSTIN
United States Magistrate Judge

Reviewed and approved as to form

JEFFREY A. SPIVAK
Assistant U.S. Attorney

8

Affidavit of U.S. Postal Inspector Jessica Burger